UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Randall Brawner, | ) | C/A No.    5:12-1889-RMG-KDW |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Leroy Cartledge; Steven Lewis; J. Parker; Frank Mursier; Harrison; James Sligh; Dennis Patterson; all sued in their individual capacities, | ) | |
| Defendants. | ) | |

Plaintiff, proceeding pro se and *in forma pauperis*, brought this action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the court on Defendants' Motion for Summary Judgment filed on May 6, 2013. ECF No. 81. As Plaintiff is proceeding pro se, the court entered an order on May 7, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. ECF No. 82. Plaintiff responded to Defendants' Motion for Summary Judgment on December 6, 2013, ECF No. 138, and Defendants filed a reply to Plaintiff's response on December 30, 2013, making this motion ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because Defendants' motion is dispositive, a Report and Recommendation is entered for the court's review.

I.     Factual Background

Plaintiff James Randall Brawner ("Plaintiff") is an inmate currently incarcerated at Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Plaintiff

filed his initial Complaint on July 6, 2012. ECF No. 1. He submitted an Amended Complaint on December 3, 2012, ECF No. 42, which the court permitted to be filed and served. ECF No. 58. Plaintiff's Amended Complaint alleges claims for conspiracy, denial of due process, and denial of equal protection. ECF No. 42 at 2. Specifically, Plaintiff complains that he, along with other prisoners in pink jumpsuits,[1] was placed on early lockdown at 6:00 p.m. "instead of the usual 11:15 pm, like other prisoners of the same custody/classification." ECF No. 42 at 3. Plaintiff contends that this sanction was created, and acted upon, "without proper notice, to warn [Plaintiff] that [he] would be subjected to an early lockdown because of his [actions], 'before' [he] violated any offense." *Id.* Plaintiff alleges that he was placed on early lockdown for a few days and then he was told by another shift that the early lockdown was over and he was let "out after 6 pm count cleared" but was told that "he could not go to any more evening services." *Id.* Plaintiff contends that a different shift came on duty and would not permit him to leave his cell; when Plaintiff told the officers that lockdown was over, an officer told Plaintiff that he was informed "at briefing, that [pink jumpsuits] were still under the same sanction." *Id.* at 4. Subsequently, some of the "pink jumpsuit" inmates held a meeting and decided to speak with the "wardens and majors" as to whether the 6:00 pm lockdown was still being enforced. *Id.* Plaintiff contends that he was told "[pink jumpsuits] were off lockdown, but could not go to evening services." *Id.* Plaintiff alleges that this information was given to the dorm staff and "things changed for a few days and [they] were not locked down, then [they] ended up locked down again." *Id.* at 4. Plaintiff contends that he later learned that "the warden and major had been lying to [them] and actually telling the staff to lockdown." *Id.* at 5. Plaintiff avers that he filed a Step 1 grievance about the early lockdown which was denied by Defendant Cartledge

---

[1] In 2005, SCDC Director Jon Ozmint adopted an amendment to SCDC Policy No. OP-22.14 entitled "Inmate Disciplinary System" which created a pink jumpsuit sanction for inmates convicted of "Sexual Misconduct." ECF No. 81-1 at 2.

who stated that the "restrictions were established to monitor the prisoners in pink." ECF No. 42 at 5-6. Plaintiff then filed a Step 2 grievance which was denied by Defendant Sligh. *Id.* at 6.

Plaintiff further contends that on September 26, 2009, while standing outside of medical waiting for medication to be dispensed, Defendants Harrison and Wright walked over to Plaintiff and asked why he was standing there. ECF No. 42 at 6. Plaintiff alleges that he was the only inmate waiting in line that was wearing a pink jumpsuit. *Id.* at 6. Plaintiff contends that he was removed from the medication line and placed in the shower on Special Management Unit ("SMU") against SCDC policies and procedures. *Id.* Plaintiff contends that he requested that he be placed in a cell, as opposed to the shower, but his request was denied. *Id.* Plaintiff alleges that he stood in the shower for approximately four hours; during this time Plaintiff contends he was served lunch, could not use the bathroom, and could not sit down because the shower was not clean. *Id.* at 7. Plaintiff filed a Step 1 grievance about being placed in the shower which Defendant Cartledge responded to by stating the incident "had been checked into" and the matter had been addressed "with security personnel for any corrective action found warranted." ECF No. 1-2 at 8. Plaintiff was not satisfied with Defendant Cartledge's response and filed a Step 2 grievance that was resolved by Defendant Patterson. ECF No. 42 at 8. Plaintiff seeks declaratory relief, compensatory damages and punitive damages. *Id.* at 9.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear

3

failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.  Analysis

A.  Due Process Violation

Defendants argue they are entitled to summary judgment on Plaintiff's due process claim because the cell restrictions that were applied to the pink jumpsuit inmates were constitutional. ECF No. 81-1 at 5. The United States Constitution allows prison administrators wide-ranging deference in their adoption and execution of policies and practices that in their judgment are

4

needed to preserve internal order and discipline and to maintain institutional security. *McKune v. Lile,* 536 U.S. 24, 39 (2002). To state a due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)(internal citations omitted). In *Sandin v. Conner*, the Supreme Court refined the test for when a state has created a liberty interest, abrogating the method of parsing the language of particular regulations to discern whether a State had created a liberty interest:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 472, 483-84 (1995) (internal citations omitted). Thus, "challenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" *McKune v. Lile*, 536 U.S. 24, 37 (2002) (quoting *Sandin*, 515 U.S. at 484).

Defendants contend that certain restrictions began to be applied to inmates in pink jumpsuits in August 2009, including a 6:00 pm count and early lockdown, as opposed to a count and lockdown at 10:00 pm. ECF No. 81-1 at 3. Defendants attest that these restrictions were implemented due to "an increased number of incidents involving specifically inmates in pink jumpsuits, including disruptive behaviors, assaults, robberies, exhibitionism and public masturbation, and refusal to cooperate with staff." Mursier Aff. ¶ 4, ECF No. 81-2. Defendants aver that the new restrictions were used in an attempt to deter the pink jumpsuit inmates'

5

disruptive behavior and "to closely monitor the inmates in pink jumpsuits and to attempt to control the disruptive behaviors." Lewis Aff. ¶¶ 4-5, ECF No. 81-2. Defendants attest that the new restrictions were not permanent, and were lifted when the disruptive behaviors improved, and re-implemented as necessary. Mursier Aff. ¶ 5. Defendants argue that the imposition of a 6:00 pm count and lockdown does not present an atypical, significant deprivation and therefore does not implicate any liberty interest or due process rights. ECF No. 81-1 at 6. Plaintiff argues that these restrictions were put in place without giving Plaintiff an opportunity "to stop [his] actions or violate another infraction before sanctioning [him] again for the same charge." ECF No. 138 at 2. Plaintiff contends that SCDC policies and procedures provided Plaintiff with a liberty interest to attend "religious services, law library and etc. that may have been held after 6 pm for prisoners in Minimum In (MI) Custody." *Id.* Plaintiff contends that the pink jumpsuit restrictions "interfered with [his] constitutional rights (14th)" and Defendants "conspire[d] together" to deprive Plaintiff of his liberty interest. *Id.* at 2-3.

Here, Plaintiff has failed to allege facts sufficient to establish that the conditions or duration of his confinement posed an atypical and significant hardship. Plaintiff temporarily experiencing a 6:00 pm count and lockdown, and an inability to attend religious services and the law library after 6:00 pm, is not an atypical and unusually harsh circumstance as compared to the ordinary circumstances contemplated by a prison sentence. To the extent Plaintiff claims that his due process rights were violated because Defendants failed to follow SCDC policies and procedures, this claim must also fail because it does not rise to the level of a constitutional violation. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Allegations that Defendants did not follow SCDC's policies or procedures, standing alone, does

6

not amount to a constitutional violation. *See Riccio*, 907 F.2d at 1469 (finding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

### B. Cruel and Unusual Punishment

Defendants contend that Plaintiff's alleged confinement in a shower stall for approximately four hours does not give rise to an Eighth Amendment violation, and therefore Defendants are entitled to summary judgment on this claim. ECF No. 81-1 at 8.

As a general matter, the Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Shakka*, 71 F.3d at 166. To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference - that is, the prisoner must show the officials acted with more than mere negligence but less then malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also*

7

*Farmer* 511 U.S. at 835-37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 Fed. Appx. 348, 353 (4th Cir. 2012).

In support of summary judgment, Defendant Harrison attests that he does not recall Plaintiff being placed in a shower stall on September 26, 2009, however, he avers that shower stalls were used by McCormick security staff, in 2009, as temporary holding cells. Harrison Aff. ¶ 4, ECF No. 81-4. Defendants contend that Plaintiff has not offered any case law that shows that being placed in a dirty shower stall for four hours where he ate his lunch and was not able to use the bathroom is actionable under the Eighth Amendment. ECF No. 81-1 at 11. Defendants further argue that Plaintiff has failed to produce any evidence that his four-hour confinement in a shower stall resulted in a serious or significant physical or emotional injury or a substantial risk of serious harm as is required when stating an Eighth Amendment violation. ECF No. 81-1 at 11.

Plaintiff responds to Defendants' summary judgment arguments and contends that Defendant Harrison improperly placed him in the SMU showers where Plaintiff stood for over four hours in a shower that was "dirty and small" and had "trash and hair on the floor, small black water bugs." Brawner Aff. ¶ 16, ECF No. 138-6. Plaintiff attests that he was "on medication for injuries and pain to [his] left ankle and foot, lower back and nerves" and that he had to walk around to keep himself from falling asleep "from the effects of [his] medication." *Id.* ¶ 17. Plaintiff also complains that he was served lunch while in the shower stall. *Id.* Plaintiff contends that he "was mad at Harrison for doing this to [him] for no reason" and that Harrison was deliberately indifferent to his emotional and physical suffering. ECF No. 138 at 3. Plaintiff also offers affidavits from Inmates Jonathan Arnold and Lester Davis who attest that they did not

witness Plaintiff being placed in the shower, but Inmate Arnold states that he was placed in the SMU showers for being "out of place," and Inmate Davis attests that he talked to inmates who talked to Plaintiff while he was in the shower and that he "witness[ed], many times, prisoners being lead to the showers . . . and being held for large amounts of time and sometimes for 'over' four (4) hours."  Arnold Aff. ¶¶ 2-3, ECF No. 138-4; Davis Aff. ¶¶ 2-3, ECF No. 138-6 at 12-13. Additionally, Plaintiff offers an affidavit from Inmate Derrick Singleton who attests that he was placed in the SMU shower stalls on September 26, 2009 where he met Plaintiff, who was also in the SMU shower stalls.  Singleton Aff. ¶ 2, ECF No. 138-6.  Singleton further attests that the SMU holding cells were empty on this day, and that the shower stalls were small and dirty, and that Singleton also had to eat lunch in the shower stall.  *Id.* ¶¶ 3, 7.

In reply, Defendants reiterate the arguments made in their original Memorandum filed in support of their summary judgment motion and object to Inmate Arnold's and Davis's affidavits as irrelevant.  ECF No. 146 at 1-2.

Here, the conditions of confinement of which Plaintiff complains do not rise to the level of an Eighth Amendment violation. The record shows that Plaintiff was, at most, forced to stand in a dirty shower for four hours which does not constitute a serious deprivation of a basic human need.  Further, Plaintiff has not offered any evidence that he was either injured or suffered a substantial risk of serious harm based upon the challenged conditions. Accordingly, the undersigned recommends granting summary judgment to Defendants on this claim.

### C.  Failure to Properly Handle Grievances

Plaintiff contends Defendants Sligh and Patterson improperly investigated and dismissed his grievances. ECF No. 138 at 4-5.  Inmates do not have a constitutionally-protected right to a grievance procedure within the prison system under the First Amendment, the Due Process

9

Clause, or any other statute. *See Adams v. Rice*, 40 F.3d at 75 (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, and there is no constitutional right to have a grievance timely determined within the prison system. Accordingly, the undersigned recommends that Plaintiff's claim related to his right to have his grievances properly handled and processed be dismissed.

### D.  Equal Protection

Plaintiff also asserted an equal protection claim in his Amended Complaint. ECF No. 42. To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 654). Defendants contend they are entitled to summary judgment on Plaintiff's equal protection claim because Plaintiff "cannot show that he was treated differently than similarly situated inmates" as the "new cell restrictions applied to *all* inmates required to wear a pink jumpsuit." ECF No. 81-1 at 6-7 (emphasis in original). Plaintiff did not respond to this argument in his memorandum opposing Defendants' summary judgment motion. *See* ECF No. 138. Accordingly, the undersigned finds that Plaintiff has not articulated any facts that would support an equal protection claim, and therefore recommends that Defendants be granted summary judgment on this claim.

E. Qualified Immunity

Defendants assert they are entitled to qualified immunity under *Harlow*. ECF No. 81-1 at 13-16. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301. (4th Cir. 2004). "If the right was not clearly established in the specific context of the case - that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the

11

exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.[2]

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 81, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

December 31, 2013
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[2] To the extent that Plaintiff's Complaint articulates a conspiracy claim against Defendants, the undersigned finds that Plaintiff has failed to offer sufficient evidence to establish that Defendants' actions deprived Plaintiff of a constitutional right.  Accordingly, the undersigned recommends that Plaintiff's § 1983 conspiracy claim be dismissed. "To establish a civil conspiracy under § 1983, [Plaintiff] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

12